## FRESNO MILLING CO. v. FRESNO CANAL & IRRIGATION CO.

### No. 18,133; March 30, 1894.

#### 36 Pac. 412.

Contract for Water-power—Construction.—A contract for the use of water as a motive power for a mill gives the mill no right to use such water for any other purpose.

Contract for Water-power—Damages for Breach.—Under a contract for the use of water as a motive power the mill owner is not damaged by a failure to deliver the amount of water called for, when an amount equal to the full capacity of plaintiff's mill wheel is delivered.

Judgment—Pleading in Bar During Time for Appeal.—A judgment cannot be pleaded in bar during the time for appeal therefrom and while a motion for a new trial is pending.

APPEAL from Superior Court, Fresno County; M. K. Harris, Judge.

Action by the Fresno Milling Company against the Fresno Canal & Irrigation Company. From a judgment for defendant and an order denying a motion for a new trial plaintiff appeals. Affirmed.

T. P. Ryan for appellant; Church & Cory and Harry I. Thornton for respondent.

GAROUTTE, J.—This appeal is taken from the judgment and order denying a motion for a new trial. Upon the rendition of the judgment the trial court filed the following opinion regarding the questions involved in the litigation. It is lucid and convincing, and we are satisfied with the views there expressed:

"The pleadings in this case are quite voluminous, but the relief sought and prayed for may be divided into three heads: First. That a certain contract of writing, entered into by M. J. Church, the Fresno Canal and Irrigation Company, and the Fresno Milling Company, dated April 22, 1886, be canceled, and that the defendant, the canal company, be enjoined from using the same or asserting any rights thereunder. Second. That the defendant, the canal company, be required to furnish a deed in fee simple to the plaintiff to eighty-three and one-third cubic feet of water passing a given point per second. Third. That the defendant be required to pay said plaintiff damages for said canal company's failure and neglect to furnish certain water agreed to be furnished to plaintiff, or the value of the rents and profits of certain water alleged to have been used by defendant, which plaintiff alleges rightfully belong to the plaintiff, the milling company. There are other questions, but they are corollaries of the foregoing propositions, and stand or fall with them.

"On the tenth day of September, 1885, a certain contract of writing was entered into between M. J. Church, the Fresno Canal and Irrigation Company, and one Joseph G. Deming. Under this contract said Church agreed to sell said Deming lots 28, 29, 30, 31 and 32, block A, of the town of Fresno, on which were then situated what were commonly known as the 'Champion Mills,' together with said mills and other improvements thereon, and the water-power to the amount of eighty-three and one-third cubic feet of water per second for running said mill, with all the privileges and appurtenances thereunto belonging or appertaining, for which said Deming agreed to pay the sum of $20,500—$10,000 in cash, and $10,500 thereof as soon as the canal used to convey water to said mill for motive power should be so enlarged and improved as to deliver to said mill for such motive power the amount of eighty-three and one-third cubic feet of water per second. The party of the second part, the Fresno Canal and Irrigation Company,

38

agreed to begin at once upon said canal to increase its capacity, as aforesaid, and to enlarge and improve the said canal so that it should deliver at the said mill, for its motive power, not less than eighty-three and one-third cubic feet of water per second; said work to be completed within ninety days. Said Church and the canal company further agreed that when said second installment of the purchase price of said property, to wit, $10,500, should be paid, that they would make, execute, and deliver to said Deming, as the grantee, a good and sufficient deed of grant of said property, which should convey to him a perfect title in fee simple, absolute, free and clear of all encumbrances, of said lots, with said mill and improvements thereon situated, together with all the privileges and appurtenances thereunto belonging, with a water right of eighty-three and one-third cubic feet of water per second for said mill during the existence of said corporation. The canal company further agreed that upon the payment of said sum it would furnish to said Deming, during the period of its existence, for the running of said mill, an amount of water equal to eighty-three and one-third cubic feet per second, providing that it should have the privilege of shutting off the water in said ditch during such times as should be necessary for the repairing of the same etc., and should not be held responsible for lack of water caused by drought, insufficient water in King's river, hostile diversion, temporary damage by flood, etc., but that it should at all times use due diligence in restoring and maintaining the flow of water in said canal. It was also agreed that said Deming should have the right to turn in enough additional water to make up said amount into the mill canal, at any waste-way or bulkhead between the mill and the northwest corner of section 36, township 13 south, range 20 east, in case of any deficiency in said agreed supply, or that he might turn off any excess, if necessary. The canal company further agreed that it would enlarge the capacity of the ditch below the mill, so as to take away the water as fast as it should be necessary to prevent its impeding the running of the mill. This clause is also in said contract: 'It is also understood and agreed by and between the respective parties hereto that the above grant to the party of the third part [being said Deming] of the water right of eighty-three and one-third cubic feet of water per second as a motive power for

said mill is intended to vest in said third party [Deming], his heirs and assigns, forever, anything in the above instrument to the contrary notwithstanding.'

"Afterward, on the twenty-second day of April, 1886, a contract in writing was entered into between the defendant, the Fresno Canal and Irrigation Company, and the said Joseph G. Deming, in which it was provided that, in consideration of the sum of five dollars and other good and valuable considerations, said canal company agreed to furnish and thereby grant to said Deming all the water that might be required, not exceeding at any time eighty-three and one-third cubic feet per second, to be supplied by and through the canal known as the 'Mill Ditch,' on Fresno street, in the town of Fresno, county of Fresno, to the use of the said party of the second part, as a motive power to propel the machinery of a flouring-mill situated on said lots 28, 29, 30, 31 and 32 in block A of said town, together with the privilege of entering upon said canal and building and maintaining such proper and necessary works and machinery as might be proper in order to utilize said water and water power for the purposes of a flouring-mill, provided such use should not interfere with the flow of water in said canal. It is also agreed that the canal should be under the control of the canal company, and that it should have the right to use and enlarge the same, provided such use and enlargement should not interfere with the flow of water to the mill. It is also provided that said Deming should return all said water so used to the mill ditch, and not permit the same to run to waste, and not to use or permit the same other than as a motive power for said mill. It was also understood and agreed that the water to be used and granted was intended to form a part of the appurtenances of said mill and land, and that the right thereto should be transferable, etc. It is further covenanted and agreed, among other things, that the canal company might sell one thousand water rights of one cubic foot of water each, and if at any time the aggregate quantity of water in the canal of said company should fall short of one thousand cubic feet of water flowing per second, then said eighty-three and one-third cubic feet should represent eighty-three and one-third thousandths of said aggregate quantity, and said Deming should be entitled to receive water in that proportion. It is also covenanted that the agree-

ments and covenants in said contract should run with and bind said land and mill. There are a number of other stipulations in said contract, which, however, are contained in the contract first referred to herein, and are not now necessary to be noticed. Afterward said Deming conveyed all his right, title and interest in said property, and his rights under said contracts, to the Fresno Milling Company, the plaintiff herein.

"Plaintiff in this action claims that the assigned contract— the one dated the twenty-second day of April, 1886—was procured by fraud on the part of the Fresno Canal Company, and is, as to the plaintiff herein, null and void; that under the first contract made said Deming, or his successors, the plaintiff, was entitled to a deed in fee simple to said eighty-three and one-third cubic feet of water, to be used by said plaintiff in any manner that it should see fit. The contention of the defendant, on the other hand, is that the assigned contract was not obtained by fraud, but was entered into to take the place of the first contract, and for the purpose of more fully and precisely carrying out the views and intentions of the parties thereto; that it was never intended that the plaintiff should have any right to said water, excepting as a motive power to its mill. Without reviewing at length the evidence on this point, I think it clearly appears, not only from the terms of the contracts themselves, but from the other evidence in the case, that the second contract was not procured by fraud; that the parties to it understood fully its terms and effect, and that it fully expresses what the intentions of the parties were from the inception of the transactions complained of down to the time of their completion, and that it was intended by both parties thereto that it should take the place of the first contract; that they both entered into it with a full understanding of its terms and effects of the covenants therein contained. To mention a few of the many reasons for this conclusion, I would say that the amount of water, according to the evidence—eighty-three and one-third cubic feet per second—was worth for irrigation purposes, at the rates at which water was being sold at that time, over $65,000, whereas the full purchase price agreed to be paid by the plaintiff for the use of said water, together with said four lots with the improvements thereon, was only $20,500. It will also be understood that throughout the first instrument—because, as

to the terms of the second instrument, there can be no question —the expression constantly occurs that said water was to be furnished to said Deming for motive power to said mill, for the purpose of running said mill, etc. Further, that for several years after this contract was entered into, and water was being furnished to said mill, the milling company laid no claim to said water after it had passed its mill, and the defendant during all these years constantly and uninterruptedly appropriated said water to its own use, without any objection on the part of said milling company. Besides, the evidence clearly shows that the second contract was entered into deliberately by Deming, without a scintilla of proof tending to show that he was misled or overreached in any manner whatever. If this conclusion is correct, the fact, as contended by counsel for plaintiff, that the first contract operated as a grant from defendant to plaintiff, cannot alter the result, as it was simply a grant of water as a 'motive power for said mill.'

"The remaining question which I shall notice in this decision is whether or not the defendant, the canal company, has furnished to said milling company, at their mill, the quantity of water agreed to be furnished by them, to wit, eighty-three and one-third cubic feet per second. The evidence upon this point, necessarily, from the nature of the case, consists mostly of expert testimony. That offered upon the part of the plaintiff—Mr. Grunsky—who seemed to be quite a competent witness upon such matters, tended to prove that the plaintiff failed to deliver the full amount of water agreed by it to be delivered, and that it only delivered some seventy and seventy-nine hundredths feet. The evidence upon the part of the defendant consisted of the testimony of Mr. Manuel and Mr. Eastwood, two scientific men, apparently as competent and disinterested to testify upon this question as Mr. Grunsky, and their evidence tended to prove that the defendant not only delivered as much as eighty-three and one-third cubic feet of water per second, but that the supply furnished by it far exceeded this amount, to wit, about one hundred and ten cubic feet per second. It also appeared in evidence, without contradiction, that the water-wheel of the plaintiff only had a capacity of some seventy-one and ninety-one hundredths feet, and defendant contends that, even if it had failed to deliver the full amount agreed to by it, the plaintiff has not

been damaged, for the reason that, if the water had been delivered, it could not have utilized the same. It would be an idle matter for me to review the evidence of these scientific witnesses upon this question by entering upon an extended criticism of their modes of procedure and the mathematical processes upon which their opinions are based. Suffice it to say that the witnesses on both sides, though adopting and using recognized and approved scientific tests, arrived at surprisingly different conclusions; and I am of the opinion, giving it full weight, and after a very thorough consideration of all the evidence offered by them, that the plaintiff has failed to prove by a preponderance of the evidence that the defendant has not delivered the amount of water agreed upon. Upon the contrary, the preponderance of the evidence is with the defendant that something over one hundred and ten feet of water has, during the times specified in said complaint, been delivered at the mill of the plaintiff. As I stated before, the evidence is uncontradicted that the plaintiff's water wheel only had a capacity of some seventy-one and ninety hundredths cubic feet per second, and, this being true, I am unable to see in what manner the plaintiff has been injured by a failure, even if it were true, of the defendant to deliver eighty-three and one-third cubic feet of water per second, when it had no means of utilizing more than seventy-one and ninety hundredths feet. Upon this point Mr. Grunsky says: 'It would not have been of any advantage to have had a larger quantity of water in the canal or in the mill ditch than there was at the time of my observations, for the reason that the excess could not have been carried away by the tail-race.' The canal company agreed to enlarge the canal below the mill so as to properly carry off the water delivered, and this it did. But there was no agreement that it would increase the fall at the mill, which was some thirteen feet to sixteen feet, which would have entailed an expenditure of over \$20,000, in order that the power and capacity of the mill might be increased. There is no evidence that such a thing was ever contemplated by the parties. This being true, of course the court is of the opinion that the plaintiff has not been damaged, and it is idle to consider what its profits would have been had its capacity and motive power been larger.''

In addition to an answer upon the merits, defendant pleaded in bar a judgment rendered in an action entitled "City of Fresno v. The Fresno Milling Company and the Fresno Canal & Irrigation Company." When the judgment-roll in that case was offered in evidence, objection was made that it was not a final judgment, the time for appeal not having expired, and the motion for a new trial being then pending. We think the action of the court in overruling the objection error. A judgment, in order to be successfully pleaded in bar, must be a final judgment; not alone final as to the court which rendered it, but final as to the subject matter. We had occasion to discuss this question in Re Blythe's Estate (decision filed August 31, 1893), 99 Cal. 472, 34 Pac. 108, and are well satisfied with the rule of law there declared. The soundness of the doctrine finds no better illustration than is presented by the trial of the present case. The judgment which was here successfully pleaded in bar was subsequently reversed by this court. It is thus apparent how unsubstantial a thing it was, and how entirely insufficient to serve as a perpetual bar to further litigation. But the error of the court was harmless, for, as we have already seen, the defendant's cause is a just one upon the merits. The remaining objections to the admissibility of the evidence are not well founded. While the evidence in some respects may conflict, the findings all appear to find support therein. For the foregoing reasons, the judgment and order are affirmed.

We concur: McFarland, J.; Paterson, J.; Harrison, J.

BEATTY, C. J.—I concur in the conclusions of the court, except upon one point. I think it appears from the evidence, without substantial conflict, that the defendant has failed on several occasions, and for considerable periods of time, and without any sufficient excuse, to furnish the amount of water it contracted to furnish; also that it has failed to keep the canal below the plaintiff's mill clear and of sufficient capacity to carry the water away from the wheel, as it contracted to do—from all of which the plaintiff has suffered damage for which it is entitled to compensation. For these reasons I think the appellant should have been granted a new trial.